UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID HARDY,

          Plaintiff,          Case No. 2:13-cv-230

v.                                 Honorable R. Allan Edgar

UNKNOWN AGEE, et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff David Hardy, a state prisoner currently confined at the Bellamy Creek Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Chaplain Unknown Agee, Warden Duncan MacLaren, Administrative Assistant David Mastaw, and Deputy Warden Kathy Olson. Plaintiff claims that while he was incarcerated at the Kinross Correctional Facility (KCF), Defendants violated his right to freely exercise his religious beliefs.

Plaintiff has a history of spontaneous pneumothorax and has been excused from doing welding work and custodial work because of his medical condition. On March 29, 2012, Kitchen Supervisor Patty offered Plaintiff a job. Plaintiff refused a work assignment in the kitchen, citing his medical issues. Patty told Plaintiff to "sign off" and that she would send this information to the Classification Director. Plaintiff would then be called to show the Classification Director his medical information, which would exempt Plaintiff from being assigned a job in the chow hall. Because of Plaintiff's refusal to take a job in the kitchen, he was placed on room restriction and was prevented from attending Islamic services and classes in violation of his religious beliefs. Plaintiff states that he was not aware that this would happen if he refused a job assignment. According to the May 10, 2012, step II response to Plaintiff's grievance KCF 12 04 00301 02z:

> At Step I the respondent states that the grievant states he cannot work Food Services because of medical restrictions and should not be on room restriction because of it. Respondent states that Health Services cleared grievant to work on 1/9/12 and 3/23/12. Respondent states that grievant was called over to Food Service on 3/19/12 and offered a job. Respondent states that grievant refused the job claiming that he couldn't do it because of medical issues. Respondent states that grievant was informed that, because Health Services cleared him, he will need to contact Health Services to be re-evaluated for work restriction. Respondent states that until he is deemed unable to work

> by Health Services, he will remain on room restriction. Respondent states that PD 05.01.100 was followed. Grievance denied.
>
> At Step II the Step I response is supported. KCF OP 05.01.100, Program Classification of Prisoners (Initial and Reclassification) states that prisoners that appear of [sic] the Food Service list for a job assignment will have their names submitted to Health Services for medical clearance. As stated in the step I response, grievant's name was submitted twice for medical clearance (1/9/12 and 3/23/12) and grievant was cleared for work. Grievant was offered a job and refused citing his medical issues. OP KHC 05.01.100, Program Classification of Prisoners, page 3, states in part, "If a prisoner refuses to work, the prisoner will be confined to his room Monday through Friday, 8:00 a.m. to 4:00 p.m. A prisoner will remain on room restriction for a minimum of 30 days." Grievant was offered an assignment in Food Service and refused although he was medically cleared through Health Services and will remain on room restriction. There has been no violation of policy or procedure in the handling of this matter.
>
> Grievance denied.

*See* docket #1-1, p. 18 of 57.

Plaintiff complains that the response to his grievance failed to address the denial of his ability to attend religious meetings. Plaintiff sent kites to Defendants MacLaren and Agee on May 23, 2012. On May 31, 2012, Plaintiff received a kite response from Defendant Olson, stating that Plaintiff's room restriction was being modified to allow him to attend Islamic Friday service. Plaintiff was told to advise Defendant Olson if he encountered any issues during Ramadan, so that they could be addressed. *See* docket #1-1, p. 29 of 57. On June 15, 2012, Plaintiff wrote to Defendant Agee and informed him that he was now being allowed to attend religious services. Plaintiff requested to be placed on the 2012 Ramadan Observance and asked to be placed on call-out for Islamic Study period, otherwise known as Taleem. *See* docket #1-1, p. 30 of 57. Plaintiff was deprived of Taleem until October 8, 2012. *See* docket #1-1, p. 50 of 57.

Plaintiff asserts that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts a violation of his First Amendment rights. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith ..."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989).

To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). A plaintiff's right to freely practice his religious beliefs is subject to the unique challenges of running a penal system. *O'Lone*, 482 U.S. at 348. In evaluating the constitutionality of MDOC Policy regarding accommodation of weekly recurring religious practices, the United States District Court for the Eastern District of Michigan stated:

> "Because 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal

- 5 -

with these problems, [courts] generally have deferred to the judgments of prison officials in upholding [prison] regulations against constitutional challenge." *Shaw v. Murphy,* 532 U.S. 223, 229 (2001) (*quoting Procunier v. Martinez,* 416 U.S. 396, 404–05 (1974)); *see also Hayes,* 424 Fed. Appx. at 550. The "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.' " *Id.* (quoting *Bell,* 441 U.S. at 562). Thus, with respect to First Amendment claims, a plaintiff inmate "bears the burden of 'overcom[ing] the presumption that the prison officials acted within their broad discretion.' " *Hayes,* 424 Fed. Appx. at 550 (quoting *Shaw,* 532 U.S. at 232).

Accordingly, "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone,* 482 U.S. at 349 (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 128 (1977). *See also Walker v. Mintzes,* 771 F.2d 920, 929 (6th Cir.1985) ("[A] court must balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons."). Put succinctly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987).

Under *Turner,* in determining the reasonableness of the regulation at issue, four factors come into play:

> (1) whether there exists a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"
>
> (2) whether there are "alternative means of exercising the right that remain open to prison inmates,"
>
> (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and

> (4) the availability of a "ready alternative ... that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."
>
> *Turner,* 482 U.S. at 89–91. A "trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich,* 173 F.3d 398, 403 (6th Cir.1999). Rather, the four factors are "simply 'relevant' to the ultimate inquiry a court must undertake" in "determining whether a prison regulation is 'reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner,* 482 U.S. at 89).

*Dowdy-El v. Caruso*, 2012 WL 8170409, 14 -15 (E.D. Mich., July 24, 2012) (footnotes omitted).

In addressing the Muslim plaintiffs' request to attend a weekly, mandatory religious service on Friday [*Jum'ah*] without being subject to disciplinary action for missing work or school because of a conflict with services, the court stated:

> The court agrees with Defendants that, under the applicable "reasonableness" test, the Work Release Policy passes First Amendment muster. The first *Turner* factor, which requires only a "valid, rational connection" between the challenged rule and the governmental interest, is squarely in Defendants' favor. As discussed in detail above, *supra,* pp. 15–18, Defendants have articulated a compelling governmental interest in prison security that is advanced by the Work Release Policy. Moreover, because the challenged rule addresses a legitimate security concern of the State's prisons, the court finds this factor to be the single most compelling in its analysis.
>
> The second factor—whether Plaintiffs have an alternate means of exercising the right in issue—also favors Defendants. Plaintiffs argument, that they "have no alternative way to celebrate Jum'ah" under the Work Release Policy, Doc. # 59 at 19, is based on an overly-literal interpretation of the factor. The U.S. Supreme Court has made clear that the real consideration is not whether there exists a religiously-equivalent substitute for the particular practice in question, but rather whether affected inmates have some other meaningful opportunities to practice their religion. *See O'Lone,* 482 U.S. at 351–52. Indeed, *O'Lone* made this point with respect to the very *Jum'ah* prayer at issue in this case:

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time. But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end. In *Turner,* we did not look to see whether prisoners had other means of communicating with fellow inmates, but instead examined whether the inmates were deprived of "all means of expression." Here, similarly, we think it appropriate to see whether under these regulations respondents retain the ability to participate in other Muslim religious ceremonies.

*Id.* Here, even if Plaintiffs cannot participate in *Jum'ah,* they appear to retain the ability to practice their religion in other meaningful ways. For example, they apparently may participate in multiple (5 times a day) other daily prayers and in the month-long Ramadan observance. *See* Doc. # 58–10, MDOC Handbook of Religious Groups at 10–11; Dowdy Dep., p. 14 (noting that he had just "finished Ramadan," the observance of which is not at issue in this case); Caruso Dep. at 12. While those facts alone are sufficient to tilt this factor in Defendants' favor, it also appears (at least since the Memo's adoption) that Muslim inmates have been permitted to participate in the *Eid* Feasts. *See infra,* p. 37.

The third factor favors Defendants. As discussed above, *supra,* pp. 15–18, Plaintiffs' argument that accommodating their desires would not negatively impact the guards or other inmates is simply not correct. The fourth factor is fairly neutral. While the court has found that a question of fact exists as to whether the Work Release Policy is the least restrictive means of addressing Defendants' security concerns, Plaintiffs have not identified a workable solution that can be implemented at a *de minimus* cost. *See supra,* p. 19.

*Id.* at 15-16.

The court notes that Plaintiff's claim in the instant case has less merit than that of the plaintiffs in *Dowdy-El*. As noted above, Plaintiff in this case refused a work assignment, despite the fact that he had been medically cleared to work in the kitchen. This refusal resulted in Plaintiff's placement on room restriction. Therefore, Plaintiff's inability to attend Friday services and Taleem was the result of his own conduct. The fact that Plaintiff thinks that employees in Health Services may have been motivated to clear him for work by a previous lawsuit that Plaintiff had filed at URF is mere conjecture. In addition, like the plaintiffs in *Dowdy-El*, Plaintiff fails to allege facts showing that he was unable to practice his religious beliefs in other meaningful ways. Finally, Plaintiff concedes that beginning in June of 2012, Defendants modified his room restriction to allow him to attend Friday services, and that he was allowed to resume attendance at Taleem on October 8, 2012. Accordingly, the court concludes that Plaintiff fails to state a claim for the violation of his First Amendment rights.

Plaintiff also appears to be asserting a claim pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA). In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is

"central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable").

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word

"substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761. As noted above, Plaintiff in this case chose not to accept a job in the kitchen despite having been medically cleared to work there, which resulted in a room restriction. Plaintiff was not forced to choose between the tenets of his religion and foregoing government benefits, nor was he pressured to violate his religious beliefs.

Moreover, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 131 S. Ct. 1651 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Haight v. Thompson*, _ F. 3d _, 2014 WL 3973675, *1, *11-*13 (6th Cir. Aug. 15, 2014) (RLUIPA does not permit inmates to collect monetary damages from prison officials sued in their individual capacities); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, Plaintiff's claim for damages is barred. As noted above, Plaintiff's room restriction was modified to allow him to attend services after less than a month on restriction, despite his refusal to accept a job. Accordingly, any request for injunctive relief would be moot.

Finally, Plaintiff claims that his placement on room restriction violated the Fourteenth Amendment. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his

sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite"

period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

In this case, Plaintiff was placed on room restriction for refusing to work, and was confined to his room Monday through Friday, 8:00 a.m. to 4:00 p.m. Such a confinement does not constitute an atypical and significant hardship. Therefore, Plaintiff's Fourteenth Amendment claims are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 8/20/2014            /s/ R. Allan Edgar
                            R. ALLAN EDGAR
                            UNITED STATES DISTRICT JUDGE