UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID HARDY #159525,

    Plaintiff,

v.                                                  Case No.   2:13-cv-00230
                                                    HON.   GORDON J. QUIST

UNKNOWN AGEE, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff David Hardy filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Duncan MacLaren, Administrative Assistance David Mastaw, and Deputy Warden Kathy Olson. Plaintiff also named as a Defendant Chaplain Unknown Agee, who was not served with a summons and complaint. The court, on initial review, entered judgment dismissing this case on August 20, 2014.   On May 8, 2015, the Sixth Circuit vacated the dismissal of Plaintiff's First Amendment claim and affirmed the dismissal of Plaintiff's RLUIPA and Fourteenth Amendment claims.  Defendants moved for summary judgment on the grounds of failure to exhaust administrative remedies and that they were entitled to qualified immunity.   The court subsequently dismissed without prejudice the First Amendment claim for failure to exhaust administrative grievance remedies and made no ruling as to the qualified immunity defense. The Sixth Circuit vacated the dismissal and reinstated the First Amendment claim on March 5, 2018. Defendants have filed a motion for summary judgment (ECF No. 55) and Plaintiff has filed a motion for summary judgment (ECF No. 57) and a motion for default judgment (ECF No. 62).

Plaintiff moves for default judgment because Defendants have asserted that Taleem, the Islamic study group, is considered a leisure time activity inside the prison. Plaintiff disagrees with that characterization and argues that he is entitled to default judgment due to this blatantly untrue statement. Plaintiff has failed to establish that default judgment under Fed. R. Civ. P. 55(a) is appropriate under these circumstances. In the opinion of the undersigned, Plaintiff's request for default judgment should be denied.

> The Sixth Circuit has set forth the facts of this case:
>
> Hardy filed this complaint against four employees at the Kinross Correctional Facility, in their individual capacities: Prison Chaplain Agee, Warden Duncan MacLaren, Administrative Assistant David Mastaw, and Deputy Warden Kathy Olson, alleging that the defendants deprived him of his right to free exercise of his religion. Specifically, Hardy alleged that, on March 29, 2012, Kitchen Supervisor Patricia Parish offered him a job assignment in the prison kitchen. Hardy, who has a history of pneumothorax and had been excused from welding and custodial work assignments due to his medical condition, refused the kitchen assignment because "expos[ure] to extreme heat conditions might . . . trigger a respiratory attack." Parish directed Hardy to sign an Assignment Waiver Form acknowledging, inter alia, that, if he was not reclassified or deemed ineligible for the assignment, he would not be considered for return to work for at least thirty days and may be confined to his cell during working hours ("room restriction"). Pursuant to Kinross Operating Procedure 05.02.116, he was placed on room restriction because Health Services did not exempt Hardy from work in the kitchen. Hardy alleged that, while he was on room restriction, he was prevented from attending Islamic services on Fridays and Taleem (Islamic study classes), in violation of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *see* 42 U.S.C. §§ 2000cc–2000cc-5. He stated that he filed numerous grievances and kites complaining about being denied the right to attend these services and classes and that the matter was not resolved until May 2012 when his room restriction was modified to allow him to attend Friday services. He was not allowed to attend Taleem until October 8, 2012. Hardy sought compensatory and punitive damages.

(ECF No. 52).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that they are entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

Defendants Maclaren and Mastaw argue that it was not clearly established law in 2012 that a ban on religious study for prisoners on the MDOC room restriction policy violated the First Amendment. The Sixth Circuit explained that this case is not about the Constitutionality of the room restriction policy:

> The district court held that Hardy's allegations failed to state a free exercise claim because his "inability to attend Friday services and Taleem was the result of his own conduct." (Dist. Ct. Opn. at 9.) The court further reasoned that Hardy "fail[ed] to allege facts showing that he was unable to practice his religious beliefs in other meaningful ways." *Id.* The court likened Hardy's case to that brought by a group of prisoners in *Dowdy-El v. Caruso*, No. 06-11765, 2012 WL 8170409 (E.D. Mich. July 24, 2012). In that case, the inmates alleged numerous violations of their constitutional rights, including that the Michigan Department of Corrections' Policy Directive prohibiting prisoners to be released from work assignments to attend weekly religious services violated their First Amendment right to freely exercise their religion. *Id.* at *15-16. In a report and recommendation, the magistrate judge determined that the policy directive was reasonably related to legitimate penological interests and thus did not violate the inmates' First Amendment rights. *Id.* at *16.
>
> Hardy's case is distinguishable from *Dowdy-El*. First, unlike the *Dowdy-El* plaintiffs, Hardy is not challenging the validity of any

- 4 -

prison regulation. Rather, he alleges that the defendants arbitrarily denied him his right to attend religious services. The district court apparently construed Hardy's complaint as a challenge to the room restriction policy on the ground that it violates his First Amendment rights. But what the court failed to take into account is that, according to the complaint, unlike the policy at issue in *Dowdy-El*, there is nothing in the prison's operating procedure on room restriction that prohibits a restricted inmate from attending religious services. In fact, Hardy's room restriction was eventually modified to permit his attendance at Friday services. The fact that Hardy was on room restriction at the time of the alleged deprivation is relevant to an understanding of the facts of the case, but it is not his placement on room restriction that Hardy claims violates his First Amendment rights.

Second, the district court's reliance on *Dowdy-El* is misplaced because that decision was made at the summary judgment stage of the proceedings while this case was dismissed at the initial screening stage. As noted above, the district court explained that, like the plaintiffs in *Dowdy-El*, Hardy "fail[ed] to allege facts showing that he was unable to practice his religious beliefs in other meaningful ways." (Dist. Ct. Opn. at 9.) But the magistrate judge in *Dowdy-El* only looked at whether the plaintiffs had other meaningful ways to practice their religion as part of its analysis under the factors set forth in *Turner* to determine whether a policy is reasonably related to legitimate penological interests. Indeed, the question of whether an inmate has other meaningful ways to practice his religion goes to the issue of whether the restriction on religious practice is reasonable, an issue that may not be easily resolved at the pleading stage. *See Turner*, 482 U.S. at 89-90 (setting forth the four factors used to determine the reasonableness of a regulation). Here, the district court did not have the benefit of any response from the defendants and thus could not know their justifications for the alleged actions. *See Johnson v. Brown*, 581 F. App'x 777, 781 (11th Cir. 2014) (explaining that, at the § 1915A preliminary-screening stage, it could not "evaluate whether the alleged restrictions on [the prisoner]'s religious practice were reasonable in light of the four *Turner* factors"); *Ortiz v. Downey*, 561 F.3d 664, 669-70 (7th Cir. 2009) (holding that the district court erred in dismissing the plaintiff's free exercise claim at the § 1915A screening stage because it assumed, on the basis of the complaint alone, that there was a legitimate penological reason to deny the prisoner the rosary and prayer booklet that he sought); *Aqeel v. Seiter*, No. 90-3045, 1991 WL 2990, at *1 (6th Cir. Jan. 15, 1991) (holding that the district court erred in dismissing an inmate's free exercise claim at the pleading stage because it "did not have before it a development

>     of facts about security concerns upon which defendants' conduct may have been warranted"). This is especially true given that the alleged deprivation was not the result of any specific prison policy prohibiting attendance at religious services under certain circumstances.

(ECF No. 10, PageID.189-190).

The Sixth Circuit has made it clear that the constitutionality of the room restriction policy is not at issue in this case. The clearly established law that Defendants allegedly violated is Plaintiff's First Amendment right to attend religious services and to practice his religious beliefs. Whether each Defendant took actions that violated those religious rights is at issue in this case. There are two issues in this case that must be decided: (1) whether Plaintiff was unconstitutionally denied his right to attend Islamic services by Defendants due to his placement on a room restriction, and (2) whether Plaintiff was unconstitutionally denied his right to attend Taleem by Defendants due to his placement on a room restriction.

Defendants MacLaren and Mastew argue that they were not personally involved in denying Plaintiff religious services and group study. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure).

Defendants did not initially place Plaintiff on the room restriction and were not involved in denying him Islamic religious services or Taleem. Each Defendant became involved in this matter after Plaintiff filed grievances and kites. Defendant Mastaw reviewed Plaintiff's Step I grievance in KCF 12-04-3095-28a. (ECF. No. 36-11, ECF No. 36-6, PageID.295). In that grievance, Plaintiff asserted that he was denied Friday Islamic service and Taleem between April 6, 2012, and April 20, 2012. On April 23, 2012, Defendant Mastaw rejected the grievance at Step I as duplicative to Plaintiff's grievance concerning his placement on the room restriction KCF 12-04-00301-02z. Defendant Mastaw had no further involvement in the allegations made in Plaintiff's complaint. Defendant MacLaren responded to that grievance at Step II by upholding the Step I grievance rejection. (ECF No. 36-10, ECF No 36-10, PageID.294).

Defendant MacLaren also received a kite from Plaintiff, dated May 23, 2012, and referred that kite to Defendant Olson for consideration. Defendant Olson had responded to Plaintiff's Step I and Step II grievances (KCF 12-04-00301-02z concerning Plaintiff's room restriction). Defendant Olson denied that grievance at each Step. That grievance did not involve

the denial of religious services or Taleem. After Defendant MacLaren forwarded Plaintiff's May 23, 2012, kite to Defendant Olson, Defendant Olson learned that Plaintiff was not being allowed to attend Friday Islamic Ju'mah services and Taleem.  Defendant Olson states that Plaintiff should have been allowed Friday Islamic services and she immediately corrected the oversight. Plaintiff was then allowed to attend Islamic services after May 30, 2012. (ECF No. 36-3).

However, Defendant Olson states that Plaintiff was not allowed to attend Taleem because he remained on the room restriction.  The Michigan Department of Corrections considers Taleem to be a leisure time activity because it is not a primary religious service, but religious study. A prisoner placed on a room restriction may not attend leisure time activities. As previously explained, Plaintiff takes issue with the characterization that Taleem is a leisure time activity.

Defendants were not involved in denying Plaintiff's Islamic weekly religious service.  Defendants Mastaw and MacLaren rejected Plaintiff's grievance because they believed that his grievance was addressed previously when Plaintiffs filed his initial room restriction grievance. Defendants Mastaw and MacLaren's act of responding to a grievance, even when their grievance responses were clearly wrong, fails to establish their personal involvement in the alleged unconstitutional conduct.  Allegations that a prison official denied a prison grievance, fails to state a claim for relief. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). In the opinion of the undersigned, Defendants Mastaw and MacLaren should be dismissed from this action because their only direct involvement was to reject Plaintiff's second grievance.

Defendant Olson acted to correct the "oversight" that prevented Plaintiff from attending Islamic religious services.  As soon as she became aware that Plaintiff was being denied weekly Islamic group religious service, she corrected the mistake and allowed Plaintiff to attend weekly group services again. Defendant Olson was not involved in denying Plaintiff group

religious service. Defendant Olson acted to correct the error that prevented Plaintiff from attending Islamic group Ju'mah services.

Defendant Olson did not allow Plaintiff to attend Taleem because the room restriction still was in effect and Taleem was not available to prisoners placed on a room restriction. The MDOC characterized the religious study Taleem, as a leisure time activity because it is not the Islamic primary religious service. (ECF No. 36-3, PageID.267). Defendant Olson allowed Plaintiff to attend his primary religious service, weekly Ju'mah. Plaintiff asserts that Taleem is also a primary religious service and not a leisure time activity. OP KCF 05.02.116 prohibits prisoners on a room restriction from attending leisure time activities. Prisoners who refuse to work "will be placed on room restriction and restricted from any leisure time activities 8:00 A.M. to 4:00 P.M. Monday through Friday." (ECF No. 36-4, PageID.271). Plaintiff has asserted that Taleem "is our Islamic Study period" where Arabic is taught. (ECF No. 59-3, PageID.452).

It is important to remember that Defendant Olson did not initially deny Plaintiff weekly Islamic service, Ju'mah, or Islamic study Taleem. Defendant Olson reinstated Plaintiff to his weekly Islamic service soon after learning that he was not allowed to attend that service. The issue that must be decided is whether Defendant Olson violated Plaintiff's First Amendment rights by not reinstating his Islamic study, Taleem at the same time. In determining that Plaintiff could not attend Taleem, Defendant Olson relied on OP KCF 05.02.116.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted) (the Supreme Court upheld a prison policy that prevented Muslim prisoners from attending weekly Ju'mah services, central to their faith, because alternative means existed that allowed the prisoners

to practice their beliefs). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at \*2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-

90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").  If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted).  It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Plaintiff has asserted that Taleem is important to his study of Islam because he cannot learn Arabic without guidance from a qualified instructor.   (ECF No. 59, PageID.447). Defendant Olson determined that because Plaintiff refused his work assignment despite being medically cleared for the assignment, he was not allowed to attend Taleem between normal work hours.  Defendant Olson determined that Taleem is not the primary Islamic religious practice. Plaintiff would have been able to attend Taleem if he did not refuse his work assignment. Plaintiff has not directly challenged the KCF policy that limits leisure time activities when prisoners refuse a work assignment. Defendant Olson points out that prisoners who refuse work assignments "need to learn that there are consequences for refusing to engage in a job when one is offered."   (ECF No. 36-3, PageID.267).   The prison has an interest in creating incentives for prisoner to work productively.  Weekly Ju'mah prayer is considered the primary group religious service for Muslim prisoners.  Defendant Olson allowed Plaintiff to attend weekly Ju'mah.  Defendant Olson refused to allow Plaintiff to attend Taleem, the religious study group, because it is not

considered the primary group religious service for Muslim prisoners.  Plaintiff was able to attend Taleem starting in September of 2012, once his room restriction was removed.  Plaintiff was able to continue to practice and study his religion while confined to his cell during his room restriction and he could attend activities after 4:00pm each day.

It is the opinion of the undersigned that Defendants are entitled to qualified immunity. Defendants Mastaw and MacLaren responded to Plaintiff's second grievance, which challenged his room restriction and, more specifically, the denial of group religious services and group study.  Defendants rejected that grievance because Plaintiff had already challenged his room restriction in a previous grievance. Defendants' actions in denying a grievance did not violate any clearly established law.  Defendant Olson reinstated Plaintiff's group religious service as soon as she learned that he was being denied weekly Ju'mah.  Defendant Olson did not violate clearly established law when she reinstated Plaintiff's weekly group religious services. Similarly, Defendant Olson could not have violated clearly established law when she determined that Plaintiff would not be reinstated to Taleem while on room restriction for refusing to accept a work assignment.  Defendant Olsen did not deny Plaintiff the ability to practice his religious beliefs or to personally engage in the study of Islam.  In the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's claims against them.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment.  Accordingly, it is recommended that Defendants; Motion Summary Judgment (ECF No. 55) be granted and that this case be dismissed in its entirety.  It is further recommended that Plaintiff's motion for summary judgment (ECF No. 57) and motion for default judgment (ECF No. 62) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).   For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.   Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).   If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

   /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:     December 11, 2018